IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| ANTHONY BISHOP and | ) | |
| AMBER BISHOP, | ) | |
| | ) | |
| Plaintiffs | ) | |
| v. | ) | No. 2:24-cv-00116-DCLC-CRW |
| ARTEL LOGISTICS, INC. and | ) | |
| NUUH BASHIR OSMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Artel Logistics, Inc. and Nuuh Bashir Osman collectively moved for summary judgment [Doc. 47], claiming that a "Limited Liability Release" Bishop signed for consideration of payment under Defendants' insurance policy bars any further recovery. They argue that because Bishop did not strictly follow Virginia's Uninsured/Underinsured motorist ("UIM") statute, codified at Va. Code 38.2-2206, he is barred from any further recovery. Bishop has responded in opposition [Doc. 52]. The matter is now ripe for resolution.

## I.    BACKGROUND

For purposes of this motion, the facts surrounding how Bishop was injured are undisputed. On July 23, 2023, Osman was operating his tractor trailer when his brakes began smoking. He pulled his vehicle over and called for roadside assistance. Bishop, a diesel mechanic, responded to his call. He entered the cab with Osman to assess the problem. He tested the brakes several times to verify they would maintain the tractor trailer's position while he inspected them under the vehicle. Bishop then instructed Osman not to touch the brakes while he inspected them under the vehicle. Bishop then went under the truck to inspect the brakes when he heard the hissing sound of Osman releasing the brakes. The vehicle rolled forward, caught Bishop's boot, and dragged

1

him around 25 feet along the asphalt, removing the skin and flesh off his leg. Bishop suffered serious bodily injuries as a result. At the time of this incident, Bishop had an underinsured/uninsured policy with Erie Insurance Company.

Bishop sent Defendants a demand for policy limits on November 24, 2023. Defendants agreed to tender the policy limits. The parties exchanged a few proposals, but ultimately, they agreed on a "Limited Liability Release" (the "Release"). It is the effect of this Release that is the subject of this motion. The terms of the Release are not in dispute. It provides as follows:

> In consideration of the payment provided for [herein] …, this Release shall operate as a full and final release of Defendants/Releasees, and all other persons - or entities - which are or might be claimed to be liable or responsible to Plaintiff/Releasor as a consequence of the Incident from any and all claims, … causes of action, liabilities, … judgments, … or complaints of any kind, … including, but not limited to, all claims for compensatory and punitive damages, damages for personal injury, property damage, … or any other type of damages or relief under any common law, equitable claim, contract, statute, regulation, or ordinance, EXCEPT that this Release shall not bar any claims the Plaintiff/Releasor has against the Defendants/Releasees to the extent other insurance coverage is available which covers the claim(s) of the Plaintiff/Releasor against the Defendants/Releasees. This Release shall not operate as a release of any other persons or entities not specifically named herein, NAMELY Plaintiff/Releasor's Insurer, Erie Insurance Co., and shall not operate as a release of the Plaintiff/Releasor's claims against any other tortfeasor or insurance carrier not named in this Release.

[Doc. 52, Ex. 2, pg. 2]. This Release specifically contemplated Bishop making a claim against his underinsured/uninsured policy with Erie Insurance. And, indeed, he did. But when Erie refused to tender any money under his policy, Bishop sued Defendants in this Court.

Defendants have moved for summary judgment, arguing that Bishops' claims are barred by the Release Bishop signed. Defendants claim this Release executed on January 15, 2024, released Defendants from *any* liability related to the accident. Defendants argue that the Release did not require Defendants to cooperate with Bishop's underinsured motorist (UIM) carrier, Erie Insurance Company — a requirement under Virginia's UIM statute. As a result, Defendants assert

2

that Bishop cannot sue them to pursue UIM benefits from Erie. Defendants request that the court grant their motion for summary judgment, dismissing them from the lawsuit.

The Bishops responded, arguing that there are genuine disputes of material fact that preclude such a judgment. The Bishops contend that they never unequivocally released Defendants from *all* liability related to the trucking incident, as they had redlined a proposed general release to preserve their right to pursue claims under their underinsured/uninsured motorist policy. Defendants' insistence that the Bishops agreed to a general liability release is disputed, as the Bishops assert they only agreed to a limited liability release. Despite Defendants' insurance company's agreement to pay their policy limits, the Bishops argue that the limited liability release allows them to pursue further claims, as it does not bar claims covered by other insurance. The Bishops assert that the limited liability release does not prevent them from seeking damages that exceed the liability limits, and they have a potential bad-faith claim against Erie.

Defendants replied, arguing that the Bishops failed to meet Virginia's UIM statute, specifically Va. Code Ann. § 38.2-2206, which, they claim, is necessary to pursue UIM benefits from Erie. Defendants assert that the Plaintiffs' argument about the "general" versus "limited" release in the Release is unfounded, as the parties agreed that Artel had no other liability insurance coverage for the accident, and Plaintiffs should be barred from changing their stance. Defendants emphasize that Virginia's UIM statute requires strict adherence to its provisions, and Bishops' failure to execute the settlement as prescribed by the statute precludes them from naming Defendants as parties in the lawsuit.

## II.  ANALYSIS

Defendants' first point is that the "Release Agreement unequivocally released Defendant from any liability arising out of this lawsuit." [Doc. 48, pg. 6]. They also argue "there is no other

policy of insurance that provided coverage to Artel for the accident." [*Id*.]. To be sure, if the Bishops had executed a general release in consideration of payment under the policy, Defendants arguments about the effect of a general release would carry weight. But they do not here because the Release is not a full release. Rather, it releases Defendants and then provides this caveat: "the Release shall not bar any claims the Plaintiff/Releasor has against the Defendants/Releasees to the extent other insurance coverage is available which covers the claim(s) of the Plaintiff/Releasor against the Defendants/Releasees." [Doc. 52, Ex. 2, pg. 2].

Under Tennessee law, "a release is a contract and rules of construction applied to contracts are used in construing a release." *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 544, 557 (Tenn. Ct. App. 1991). In contract cases, the "cardinal rule" is that "courts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal principles." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 688 (Tenn. 2019). The "lodestar of contract interpretation" is the written words of the contract, but courts may also consider "the situation of the parties and the circumstances of the transaction in interpreting those words." *Id.* at 692, 694. "A general release covers all claims between the parties which are in existence and within their contemplation; a release confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release." *Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974). As with other contracts, however, "the scope and extent of [a] release depends on the intent of the parties as expressed in the instrument." *Id*.

Defendants claim that the scope and extent of the release is a complete discharge from any liability arising out of the lawsuit. [Doc. 48, pg. 6]. But that interpretation would make the exception clause of the Release meaningless. The Release by its own terms does not release

4

Defendants to the extent there are other sources of insurance which might cover Bishops' claim. Thus, the parties' intent is spelled out in the Release itself and is not a general release. Defendants claim that because they have no other insurance coverage, the Release bars Bishops' claims here. But the Bishops did not release Defendants to the extent "other insurance coverage is available which covers the claim(s) of the Plaintiff/Releasor against the Defendants/Releasees." Defendants interpret this to mean that they are the ones who must have the insurance. The Release does not contemplate that. Rather, the insurance coverage contemplated by the Release is Bishops' UIM policy they have with Erie Insurance.

The next argument Defendants make is that Bishop failed to follow the required statutory UIM procedure in Virginia to name them as Defendants. The Court begins with the Virginia UIM statute, Va. Code 38.2-2206. The relevant portion here is subsection K, which provides first that "[a]n injured person … may settle a claim with (i) a liability insurer … and (ii) the liability insurer's insured for the available limits of the liability insurer's coverage." It also provides that upon settlement, "the injured party … shall proceed to execute a full release in favor of the underinsured motorist's liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist benefits or claim." Va. Code 38.2-2206(K). In other words, the injured party may settle with the liability insurer and execute a full release for the underinsured motorist's liability insurer without prejudice to making a claim for UIM benefits.

Once the liability insurer pays the settlement, it has "no further duties to the insured, including the duty to defend its insured if an action … is brought against the liability insurer's insured, and the insurer providing applicable underinsured motorist coverage shall have no right of subrogation … against the underinsured motorist." Thus, the injured party's UIM carrier has no right of subrogation against the tortfeasor once the tortfeasor's liability insurer has made the

5

settlement payment. But under the statute, if the underinsured motorist "unreasonably fails to cooperate with the underinsured motorist benefits insurer in the defense of any lawsuit brought by the injured person…, he may again be subjected to a claim for subrogation by the underinsured motorist benefits insurer pursuant to § 8.01-66.1:1." *Id.*

Because the underinsured motorist may risk subrogation if he "unreasonably fails to cooperate" in the injured party's quest to access his UIM benefits, Section L of Va. Code 38.2-2206 requires "[a]ny settlement between the injured party … any insurer providing liability covered applicable to the claim, and the underinsured motorist … shall be in writing, signed by both the injured person … and the underinsured motorist, and shall include the following notice to the underinsured motorist, which must be initialed by the underinsured motorist…" *Id.* The statute then details the notice that must be given to the released party. It must advise the released party that "in order to protect yourself from subrogation by any underinsured motorist insurer, you are agreeing to cooperate with the underinsured motorist benefits insurer(s)." *Id.* It then details examples of what that cooperation would look like: sitting for a deposition; attending the trial, if subpoenaed; assisting in providing discovery responses; meeting with defense counsel at reasonable times; and providing up to date contact information. *Id.* Notice can also be provided by certified mail.

To begin with, "Section 2206 was intended to protect those injured by uninsured or underinsured motorists by requiring that they be adequately compensated for their injuries." *Jefferson v. Harco Nat'l Ins. Co.*, 2009 WL 1765670, at *3 (E.D.Va. June 18, 2009) (citing *Grossman v. Glens Falls Ins. Co.*, 211 Va. 195, 176 S.E.2d 318, 320–21 (1970); *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 169 (4th Cir.1990)). "UM Statute § 2206 is to be applied liberally in order to accomplish its intended purpose of affording relief to injured

6

persons, and any ambiguity should be construed in favor of the insured." *Id*. at *5 (citations omitted). Subsection K of the statute explicitly states that an underinsured motorist benefits insurer may regain its right of subrogation against the underinsured motorist if the motorist fails to reasonably cooperate in the defense of a lawsuit brought by the insured.

Defendants argue that while they knew the Bishops intended to pursue UIM benefits from Erie, the Bishops "failed to perfect their right to pursue Erie" and therefor Defendants should be dismissed. [Doc. 54, pg. 2]. Defendants argue that the UIM provisions "must be strictly followed and adhered to" citing *Dix v. Peters*, 374 F. Supp. 3d 213 (N.D.N.Y. 2019), *aff'd,* 802 F. App'x 25 (2d Cir. 2020) [Doc. 48, pg. 8-9]. In *Dix*, the district court addressed how Va. Code 38.2-2206 applied to the Release Agreement the parties had entered. The parties had signed a general release settling the personal injury case. The Court noted that the Release did not provide for any notice to the defendant that he would be "required to continue cooperating with the plaintiff's insurance carrier or face possible subrogation." *Id.* at 220. Defendant did not know that the plaintiff would be also seeking coverage under his UIM policy. And it was in that context that made all the difference to the Court. "Had Defendant Peters or her insurance carrier known of the extensive continuing obligations that would be placed on Defendant Peters in connection with a forthcoming underinsured motorist claim, they may very well have made a different determination and not settled the case." *Id.* at 221. The Second Circuit affirmed, also finding that the Release Agreement had release the defendant "from any further obligation arising from the automobile accident." *Dix v. Peters*, 802 F. App'x 25, 27 (2d Cir. 2020).

*Dix* is not this case. Defendants were aware of Bishops' intent to pursue additional coverage under their UIM policy with Erie Insurance. And they knew that the Bishops had not executed a general release. In other words, they knew that the Bishops still had claims out there

that needed to be addressed.  That Erie refused to pay, while not the fault of Defendants, is a risk

the release contemplated.  And unlike in *Dix*, the Release here does *not* release Defendants to the

extent that they will be also seeking coverage from Erie.  Because this case is factually different

from *Dix* and because of Virginia's courts' admonition to read this statute liberally to accomplish

its intended purpose, *see Jefferson,* 2009 WL 1765670, at *5, the Court will not read into Va. Code

38.2-2206(L) that the requirement to give notice to the underinsured is the *sine qua non* for an

injured party to pursue additional coverage under their UIM policy, especially under these facts.

## III.     CONCLUSION

For the reasons stated, Defendants' motion for summary judgment [Doc. 47] is **DENIED**.

**SO ORDERED:**


s/Clifton L. Corker
United State District Judge

8